UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAMOND PLEASANTON ENTERPRISE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF PLEASANTON, et al., <br><br> Defendants. | Case No. 12-cv-00254-WHO <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; VACATING TRIAL** <br><br> Re: Dkt. Nos. 84, 87, 91 |

## INTRODUCTION

In this lawsuit plaintiff Diamond Pleasanton Enterprise, Inc. ("Diamond"), which once owned a nightclub in Pleasanton, California, challenges defendant City of Pleasanton's conditional use permit requirements as unconstitutional prior restraints of protected speech when applied to bars and music and dance facilities. Dkt. No. 84. However, Diamond sold its nightclub in 2013 and has no specific plans to open a new one in Pleasanton. The threshold question on cross-motions for summary judgment is whether Diamond has standing to proceed. Because the matter is moot, I GRANT Pleasanton's motion for summary judgment and DENY Diamond's motion.

## BACKGROUND

### A. Diamond's Club Neo

Diamond operated a nightclub, Club Neo, in Pleasanton until March 2012. Dkt. No. 84-1 (Wolfes Decl.) ¶ 16. Club Neo operated under a conditional use permit issued by Pleasanton's Planning Commission in 2010. In February 2012, the Planning Commission modified the conditions of the conditional use permit, reducing the club's maximum occupancy from 812 to 300 patrons and requiring the club to stop serving alcohol at 1:00 a.m. instead of 2:00 a.m.

Diamond asserts that business suffered as a result of the modifications and Club Neo ceased operations in March 2012.

In November 2012, Diamond negotiated with Norcal Coconuts LLC for the sale of the business. Norcal Coconuts proposed converting the premises into a full service restaurant with entertainment several nights a week. On February 27, 2013, the planning commission approved a new conditional use permit for the premises that would accommodate the proposed new restaurant and nightclub use and allow a maximum occupancy of 500 persons. *Id.* ¶ 18. Diamond sold its interests in the club at the premises to Norcal Coconuts in mid-2013 and Norcal Coconuts is presently operating a bar, club and restaurant at the premises. Diamond no longer holds a conditional use permit for the premises.

**B. Pleasanton's conditional use permitting scheme**

Section 18.44.090 of Pleasanton's Municipal Code, entitled "Permitted and conditional uses," identifies various uses of real estate that require conditional use permits to operate. Dkt. No. 91-5.[1] Relevant here, "bars and brew pubs" and "music and dance facilities" require conditional use permits. Code § 18.44.090. Section 18.124.040 provides that the "planning commission shall hold at least one public hearing on each application for a use permit." At the public hearing "the commission shall review the application and the drawings submitted therewith and shall receive pertinent evidence concerning the proposed use and the proposed conditions under which it would be operated or maintained, particularly with respect to the findings prescribed in Section 18.124.070 of this article." Code § 18.124.040.

In turn, Section 18.124.070 provides that

> The city planning commission shall make the following findings before granting a use permit:
>
> A. That the proposed location of the conditional use is in accordance with the objectives of this chapter and the purposes of the district in which the site is located:

---

[1] I GRANT Pleasanton's request to take judicial notice of Pleasanton's Municipal Code pursuant to Federal Rule of Evidence 201 as documents not "subject to reasonable dispute" and which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Dkt. No. 91. Diamond does not oppose the request.

2

      B.      That the proposed location of the conditional use and the conditions under which it would be operated or maintained will not be detrimental to the public health, safety or welfare, or materially injurious to the properties or improvements in the vicinity;

      C.      That the proposed conditional use will comply with each of the applicable provisions of this chapter.

Code § 18.124.070.

Diamond asserts that Pleasanton's conditional use permit requirements are unconstitutional prior restraints of protected speech as applied to bars and music and dance facilities. In response, Pleasanton argues that Diamond's motion for summary judgment should be denied and that it is entitled to summary judgment because i) Diamond lacks Article III standing to challenge the permit provisions because it no longer operates a nightclub in Pleasanton, no longer holds a conditional use permit, and has no concrete plans to apply for a conditional use permit again; ii) Pleasanton's conditional use permit requirements for "bars and brew pubs" and "music and dance facilities" do not have a sufficient nexus with protected activities such that they may be subjected to a facial challenge, and; iii) Pleasanton's conditional use permit ordinance has adequate standards and procedural safeguards to satisfy the First Amendment and withstand a facial challenge.

## DISCUSSION

### I. DIAMOND'S AS-APPLIED CHALLENGE FAILS

Diamond's Third Amended Complaint alleges that the conditional use permit requirements are unconstitutional both facially and as applied to Diamond. *See* TAC, First Cause of Action. Diamond's motion for summary judgment, however, only argues for summary judgment on its facial claim. *See, e.g.,* Diamond Mot. at 1 ("Plaintiff by this action mounts a *facial* challenge against the City of Pleasanton ("City"), seeking an order of this Court declaring the City's use permit requirements for music and dance facilities and bars unconstitutional and enjoining their enforcement.").

Pleasanton did, however, move for summary judgment on Diamond's as-applied claim, arguing that the two modifications to Diamond's conditional use permit at issue—reducing Diamond's club's maximum occupancy from 812 to 300 patrons and requiring the club to stop

3

serving alcohol at 1:00 a.m. instead of 2:00 a.m.—do not run afoul of the First Amendment because neither condition directly regulates expression. Diamond. Mot. and Opp. at 16-17. Diamond's opposition brief does not respond to Pleasanton's argument and Diamond's as-applied challenge is therefore abandoned.[2]  *See, e.g., Shakur v. Schriro,* 514 F.3d 878, 892 (9th Cir.2008) (plaintiff "abandoned ... claims by not raising them in opposition to [defendant's] motion for summary judgment"); *Blount v. Morgan Stanley Smith Barney LLC*, 11-cv-02227 CRB, 2013 WL 5663480 (N.D. Cal. Oct. 17, 2013) ("Because Plaintiff did not respond to these arguments in his opposition [to a motion for summary judgment], the Court deems his claims abandoned."); *Kennedy v. Bank of Am. Nat. Ass'n*, 10-cv-0868-CW, 2011 WL 1522380, *4 n.3 (N.D. Cal. Apr. 21, 2011) ("In her opposition, Plaintiff does not respond to Defendants' arguments for judgment on her wrongful discharge claim. Therefore, she concedes this claim. Summary judgment is granted to Defendants on this claim.").

Diamond's failure to respond to Pleasanton's argument regarding the as-applied challenge also means that it has not met its burden of establishing that the First Amendment even applies to the conduct at issue. *See, e.g., Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n. 5 (1984) ("Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."). In any event, I agree that the conduct at issue does not implicate the First Amendment because occupancy and alcohol-service conditions do not limit directly regulate expressive content. To the extent that the conditions have some incidental impact on the First Amendment, I find that they do not run afoul

---

[2] At oral argument, I asked counsel for Diamond whether Diamond had waived its as-applied challenge. Counsel responded that Diamond had not, and asserted that the distinction between as-applied and facial First Amendment challenges are not as clear as some commentators suggest. Counsel stated that Diamond was making "a facial challenge to the specific application of this conditional use permit." Counsel may well be correct that the distinction between as-applied and facial challenges are not always clear cut. Even so, the operative complaint alleges that Pleasanton's conduct *as applied to Diamond* is unconstitutional, *see, e.g.,* TAC ¶ 48, and Diamond explicitly moved for summary judgment on that claim, obligating Diamond to respond or abandon the claim. I construe Diamond's challenge to the regulations as applied generally to bars and music and dance facilities as a facial challenge and consider it in the following section.

4

of the First Amendment because they are reasonable and content neutral.  *See, e.g., Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984) ("Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.").  I therefore GRANT summary judgment for Pleasanton on Diamond's as-applied claim.[3]

## II.  DIAMOND'S FACIAL CHALLENGE IS MOOT

Article III of the United States Constitution limits the jurisdiction of federal courts to live "Cases" or "Controversies."  *See* U.S. Const. art. III, § 2, cl. 1.  "The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings."  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086-87 (9th Cir. 2011) (citing *Burke v. Barnes,* 479 U.S. 361, 363 (1987)).  The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997).  A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation.  *Pitts*, 653 F.3d at 1086-87.  "Speculative contingencies" that a decision on the merits "might conceivably affect substantive rights of interested parties" are insufficient to prevent finding of mootness.  *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 239-40 (1985).  If a case is moot, the court must dismiss it for lack of jurisdiction.  *See, e.g., Johnson v. Ahlin*, 08-cv-1088 SI, 2010 WL 1729605 (N.D. Cal. Apr. 27, 2010) ("Because this case is moot, the court lacks jurisdiction and must dismiss it.").

With particular relevance here, "a controversy may become moot if a regulated business challenges a government regulatory policy or action and then terminates its operation during the pendency of the litigation."  *Munsell v. Dep't of Agric.*, 509 F.3d 572, 581-82 (D.C. Cir. 2007)

---

[3] At oral argument, counsel for Diamond asserted that Diamond has been damaged by Pleasanton's conduct.  However, as noted above, Diamond wholly failed to respond to Pleasanton's argument that Pleasanton's conduct *as applied to Diamond* was not unconstitutional.  For the reasons stated, I find that Pleasanton's conduct as applied to Diamond was not unconstitutional.  As a result, the damages issue has been resolved against Diamond.

("Normally, once a regulated business has voluntarily removed itself from the ambit of government oversight, it no longer has a legally cognizable interest in the outcome of litigation that seeks to challenge a government regulatory policy or action."). For the reasons stated below, I find that this matter is moot and GRANT Pleasanton's motion for summary judgment on Diamond's facial challenge.

Diamond has sold its nightclub business and no longer holds a conditional use permit. Diamond argues that this case is nonetheless not moot because "[t]he sale of the nightclub is not yet complete, no payments have been made to the Plaintiff by the purchaser, and it is highly likely that in the next few months the Purchaser will default and the Plaintiff will once again be in a position to open the nightclub." Diamond Mot. at 6. Diamond lists several additional theories for its continued interest in the outcome of this case: i) that "an actual controversy still exists with the City;" ii) that it "has a direct economic interest in the Purchaser's success because it holds a note secured by the nightclub business assets;" iii) that it "has an interest in resuming operations if the Purchaser defaults and onerous CUP conditions on the Premises' occupancy and hours are lifted by order of this Court;" and iv) that it "has expressed an interest in establishing a nightclub at another location in Pleasanton if the City's discretionary CUP requirements cannot be applied to obstruct the establishment of music and dance facilities and bars with entertainment and dancing."

These theories are either contradicted by the evidence or insufficient to avoid mootness. The critical testimony regarding mootness comes from Diamond's president and sole shareholder, Dr. Weil. Dkt. No. 104-2 at 16-17 (ECF p. 4-5). He testified that Diamond no longer has a lease to the premises, that Diamond has sold its business to Norcal Coconuts, that Diamond has received an initial payment from Norcal Coconuts, and that the remaining payments will be paid over 24 or 36 months. *Id* at 80-81 (ECF p. 8-9). He has no plans for the Diamond entity now that it has sold its nightclub business but he "imagines" that the entity will be "terminated," which "may have already happened." *Id*. at 83 (ECF p. 10). His only interest in the new nightclub is that it fulfill its obligation to pay him the remainder of the purchase price over the next 24 or 26 months. *Id*. at 84 (ECF p. 11). It is his "understanding" that if Norcal Coconuts defaults on its obligation to pay Diamond, then Diamond has "the opportunity to possibly find another buyer."

*Id*. at 85 (ECF p. 12).

Dr. Weil's testimony contradicted in numerous material ways the declaration of Jenny Wolfes, a former employee of Diamond.[4] Dr. Weil testified that he no longer has a business relationship with Ms. Wolfes, that Ms. Wolfes is not a Diamond employee, that she does not have a title or official position with Diamond, and that she does not own any shares in Diamond. Dkt. No. 104-2 at 16-17 (ECF p. 4-5). When asked whether he and Ms. Wolfes had "plans for any further business ventures together," Dr. Weil replied that "It's a possibility." *Id*. at 17 (ECF p. 5). However, Dr. Weil testified that he had not done anything to advance or plan any type of business venture anywhere. *Id*. Dr. Weil also testified that he and Ms. Wolfes did not have any business interest in any other nightclubs. *Id*. at 86 (ECF p. 13).

Pleasanton filed excerpts of depositions with its reply brief, in part to rebut the declaration of Ms. Wolfes. Diamond objected that "the excerpts of the depositions filed with the Court fail to fully inform the Court of the Plaintiff's interest in opening another nightclub business in the City of Pleasanton if the lawsuit is successful and there is not a requirement for a conditional use permit or the ability of the City to change conditions on use permits." Dkt. No. 105. It attached additional deposition excerpts to its objection. Dkt. Nos. 105-1, 105-2. The additional excerpts do not refute the testimony offered by Pleasanton.

Diamond points to the following testimony by Dr. Weil as evidence of its standing:

> Q: If this lawsuit is successful, and there's not a requirement for a conditional use permit or the ability of the City to change conditions on use permits, would you have an interest in opening another nightclub business in the city of Pleasanton?

---

[4] Specifically, Dr. Weil's testimony refutes Ms. Wolfes declaration that she is an officer, director and shareholder of Diamond (Dkt. No. 84-1 ¶ 1) and that she fears that NorCal Coconuts "is not able to open and operate the restaurant/nightclub at the Premises." *Id*. ¶ 27. She also declared that NorCal Coconuts "has not yet made a single payment" to Diamond and that "it is likely that [NorCal Coconuts] will default." *Id*. 30. She said that if NorCal Coconuts defaults, "I have every intention to reopen the nightclub at the Premises if and when the conditions drastically limiting the maximum allowed occupancy and liquor service hours are removed." *Id*. Ms. Wolfes also claimed that "if the discretionary CUP requirements for music and dance facilities and bars are invalidated, [Diamond] would have an interest in establishing a nightclub in another location in the City of Pleasanton." *Id*. Ms. Wolfes's later deposition testimony conceded that Norcal Coconuts received a conditional use permit, has opened and currently operates a club, bar and restaurant on the premises. Dkt. No. 104-1 at 163-64 (ECF p. 8-9).

7

> A: Yes, I would, only with Jenny Wolfes, though, yes. I like the city.

Dkt. No. 105-1 at 9-10 (ECF p. 3-4).  However, in response to questioning by Pleasanton's lawyer, Dr. Weil testified that he did not have any specific location in mind for a new nightclub in Pleasanton and that he did not have any "particular business plan that involves operating a nightclub in Pleasanton." *Id*. at 110 (ECF p. 4).

The excerpts from Ms. Wolfes' deposition are likewise unhelpful.  They include the following exchange:

> Q: Do you anticipate that you will be employed in any capacity of Club Neo, at the Club Neo premises at any time in the future?
>
> A: No. Well, actually wait. Can I-- if we end if it ends up defaulting and it ends up coming back, then yes, absolutely.
>
> Q: What would your role be there?
>
> A: I have to fix it for the doctor again. I have to find somebody else to go in there or buy it or --

Dkt. No. 105-2 at 162 (ECF p. 5).

In light of Dr. Weil's and Ms. Wolfes's testimony, I find that Diamond "lacks a legally cognizable interest in the outcome" of this litigation and this matter has become moot.  *Pitts*, 653 F.3d at 1086-87.  Diamond no longer owns a nightclub in Pleasanton and has no specific intention to open a nightclub or any other business there.[5]  Norcal Coconuts is now operating a business on the premises of Diamond's former club and has been issued a conditional use permit for those premises.  *See* Wolfes Depo. [Dkt. No. 104-1] at 163-64 (ECF p. 8-9).  Any "interest in resuming operations" that Diamond may have in the event that Norcal Coconuts defaults on its obligations is too remote to create a legally cognizable interest in the outcome of this case.

This case is similar to *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278 (2001), where the plaintiff adult bookstore operator challenged the defendant city's denial of the bookstore's application for a renewal of its business license.  During the pendency of the litigation, the bookstore ceased operations and no longer sought to renew its license.  Despite its

---

[5] Ms. Wolfes testimony regarding Diamond's future plans is inadmissible because it lacks foundation.

8

closure, the bookstore argued that the case was not moot because it might apply for a license in the future. The Supreme Court rejected this argument and dismissed the case as moot, noting that "a live controversy is not maintained by speculation that City News might be temporarily disabled from reentering a business that City News has left and currently asserts no plan to reenter." *Id.* at 285.

Similarly, in *Munsell v. Dep't of Agric.*, 509 F.3d 572, 582-83 (D.C. Cir. 2007), the plaintiff ceased its meat processing operation during the pendency of the litigation and was no longer subject to FDA regulation. The District of Columbia Circuit held that the plaintiff's claim that he anticipated reentering the meat processing business and that a favorable ruling by the court would allow him to do so was insufficient to avoid mootness.

Like the plaintiffs in *Waukesha* and *Munsell*, Diamond does not have a current stake in the outcome of this litigation, nor do Pleasanton's regulations freeze Diamond's conduct because Diamond does not have any present plans to operate a business in Pleasanton, much less one subject to the regulations at issue. Diamond therefore lacks a colorable claim that it will be affected by the ordinance in the future and lacks standing. At oral argument, counsel for Diamond argued that Diamond is the party best situated to challenge the regulations at issue, stating "if we're gone, this is gonna stay on the book, unchallenged." Any business operating in Pleasanton that is subject to the conditional use regulations, including Norcal Coconuts, has standing to challenge the regulations, and is far better situated than Diamond to do so if there is a reason to do so.

The cases cited by Diamond do not warrant a different outcome. In *City of Eire v. Pap's A.M.*, 529 U.S. 277 (2000), the plaintiff obtained a judgment invalidating Erie's use ordinance. The plaintiff then ceased operating its adult entertainment business and tried to argue that the city's appeal of the trial court's decision was moot, which the Supreme Court rejected. The Supreme Court later explained, "had we declared *Erie* moot, the defendant municipality would have been saddled with an 'ongoing injury,' i.e., the judgment striking its law. And the plaintiff arguably would have prevailed in an "attemp[t] to manipulate the Court's jurisdiction to insulate a favorable decision from review." *Waukesha*, 531 U.S. at 283-84. *Eire* therefore presents a

situation wholly unlike the one here and does not inform this matter.  In *CR of Rialto, Inc. v. City of Rialto*, 975 F.Supp. 1254 (C.D. Cal. 1997), unlike in this case, the plaintiff still owned the business at issue and had plans to move into the area where the challenged ordinance operated.  Unlike *Rialto*, Diamond no longer operates a business that is, or will be, subject to the regulations at issue.

Because Diamond no longer owns a business in Pleasanton that is subject to the regulations, and has no specific intention to start one, it lacks standing to challenge Pleasnton Municipal Code Section 18.44.090 and this case is moot.

## CONCLUSION

Pleasanton's motion for summary judgment is GRANTED.  Diamond's motion for summary judgment is DENIED.  The trial set for April 21, 2014 and all related deadlines are VACATED.

At oral argument, counsel for Diamond asserted that Diamond had prevailed on a dispute earlier in this case regarding restrictions on the type of music Diamond was permitted to perform at Club Neo.  Counsel asked that I find Diamond the prevailing party on that limited issue.  Diamond may file a motion seeking to be declared the prevailing party with respect to the dispute over music selection.  Any such motion shall be filed within 30 days of this order in accordance with the notice and briefing requirements of the local rules.

**IT IS SO ORDERED**.

Dated: March 6, 2014



WILLIAM H. ORRICK
United States District Judge

10